[No. A032585. First Dist., Div. Two. Aug 30, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN LOUIS KNOX, Defendant and Appellant.

[No. A040956. First Dist., Div. Two. Aug. 30, 1988.]

In re STEPHEN LOUIS KNOX on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, the introduction, statement of the case, statement of facts, part IV of the discussion, and the disposition of this opinion are certified for publication.

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Christoper W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

Appellant, Stephen Knox, asserts numerous instances of error in connection with both his conviction of multiple sex crimes and related offenses and his sentence. We shall affirm the judgment in all respects.

### STATEMENT OF THE CASE

By an information filed December 20, 1984, the District Attorney of Contra Costa County charged appellant with a total of fifty-five counts, comprised of the following separate counts: ten counts of forcible rape (Pen. Code § 261, subd. (2));[1] sixteen counts of forcible oral copulation (§ 288a, subd. (c)); four counts of forcible sodomy (§ 286, subd. (c)); fourteen counts of false imprisonment (§ 237); five counts of kidnapping and four counts of kidnapping by force (§§ 207 and 207, subd. (a)); one count of attempted forcible rape (§§ 261, subd. (2) and 664); and one count of child endangering (§ 273, subd. (a)(1).) Each count alleged use of a gun. (§§ 12022.3, 12022.5.) There were eight sets of victims, seven of which contained both the woman victim and a companion. Appellant pleaded not guilty and denied the use allegations.

A jury found appellant guilty of all counts except six charged in connection with one set of victims. It found the use allegations true for all but one other set of victims. The counts on which appellant was not convicted were dismissed.

On July 19, 1985, the court sentenced appellant to 142 years and 4 months in prison. A timely notice of appeal followed.

### STATEMENT OF FACTS

Appellant committed the numerous offenses for which he was convicted during seven separate incidents over a period of approximately four years. In each instance the victims were a young couple found by appellant, usually in a parked car, at night, in a remote area of Contra Costa County. In all but one case appellant used a sawed-off shotgun or automatic handgun, and sometimes a knife as well, to accomplish his crimes. Where the jury found no use enhancement, the woman thought appellant had a gun

---

[1] Further citations are to the Penal Code, unless otherwise noted.

because he threatened to shoot and broke the car window with what she thought was a gun. Before the sexual assaults, appellant forced all but one of the female victim's companions into the trunk of the car. In two instances, appellant fired the gun to force the companions to comply; in others he threatened to shoot or held the gun to the head of one of the victims. The only companion not forced into the car trunk was a woman; appellant held the gun to her head and ordered the other woman to drive to an extremely isolated dirt road close to his former residence.

Appellant forcibly raped or used force to sodomize or orally copulate the principal victim. Except for one victim, who was sodomized twice after she said she had a disease, the women were raped at least once and as many as three times, in addition to acts of sodomy and oral copulation. One was bound and gagged and left in a bedroom for a night and day. One struggled with appellant and a bullet passed close to her head when the gun discharged.

In most cases appellant wore a ski mask. He blindfolded several of the women. Appellant took four of them to houses and the others to remote areas where witnesses would be unlikely. He mentioned his children and marital problems, the details of which his ex-wife confirmed, to a number of the victims.

All but one woman positively identified appellant at or before trial. The one who was unable to do so identified distinctive features of the house to which appellant took her. Other women identified this house; it belonged to appellant's longtime friend, who had given him the key and permission to stay there. Another victim identified appellant's house, where she had seen pictures of his children. Many victims identified various vehicles appellant used.

During the search of appellant's house the police found a ski mask, weapons and ammunition of the type used in each incident, and rolls of the type of tape used to make blindfolds. An expert testified that some of the blindfolds were fashioned of continuous strips from one of these rolls. Search of appellant's vehicles uncovered the thumb print of one victim, tape with hair strands stuck to it and a spent bullet cartridge. Laboratory analysis of vaginal or anal smears from the victims disclosed semen which, in many cases, could have been produced by appellant.

### Detailed Statement of Facts*

. . . . . . . . . . . . . . . . . . . . . .

### Discussion

### I.-III.*

. . . . . . . . . . . . . . . . . . . . . .

### IV.

*Substantial Evidence Supports the Rape Convictions*

Pursuant to the definition of forcible rape given in the 1980 revision to section 261, subdivision (2) [hereinafter section 261(2)], the trial court instructed the jury that rape could be accomplished by means of force or by fear of immediate and unlawful bodily injury. (CALJIC No. 10.00 (1982 rev.).)[9]  ▮▮▮▮  Appellant concedes there was sufficient evidence of fear of injury, but argues there was not enough evidence of force. He then claims we must reverse the rape convictions because it is unclear which theory the jury used to convict him—that is, they might have convicted him of rape by force, for which, according to appellant, there is insufficient evidence.

Appellant misses the point of section 261(2), or perhaps he overlooks the logical result of his argument. Section 261 provides two distinct ways in which rape may be accomplished—force or fear of immediate and unlawful bodily injury. The Supreme Court analyzed the adoption of this definition, noting that the Legislature eliminated the resistance requirement from the definition of forcible rape so that a victim could decide whether to physically resist, and risk provoking greater injury. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 296-303 [228 Cal.Rptr. 228, 721 P.2d 110].) The court explained that under the previous version of section 261, victims who responded to a sexual assault with "frozen fright" sometimes were mistakenly thought to have cooperated with the attacker, thereby making it impossible to obtain a rape conviction. The amendment acknowledges that the failure to resist is not probative on the issue of force or consent. (*Id.,* at p. 299.) As section 261 now reads, fear of bodily injury alone will support a rape

---

* See footnote, *ante,* page 197.

[9] The rape charged in count 1, that of Lisa C., took place before this revision became effective. The jury received the pre-1980 instruction for this count.

conviction. Thus, appellant's conviction could stand regardless whether he used force. By claiming his conviction must fail since it is not clear whether the jury found force or fear, and at the same time conceding the fear test was met, appellant asks for a conjunctive finding. In essence, he argues fear of injury is not enough to convict him of rape, there must be sufficient evidence of force as well.

Appellant's contention that the rape convictions must be reversed because it is unclear whether the jury relied upon force or fear is based upon the recent decision of the Fifth District in *People* v. *Young* (1987) 190 Cal.App.3d 248 [235 Cal.Rptr. 361].

The opinion in *Young* is confusing and its meaning unclear. The case involved a defendant convicted of raping his six-year-old daughter. The conviction was reversed despite the appellate court's finding of substantial evidence of forced sexual intercourse against the child's will.

The court appears to ackowledge that the 1980 amendment to section 261(2), which used the disjunctive word "or," introduced two distinct ways in which this rape offense could occur: by "force" or "fear." (*Young, supra,* 190 Cal.App.3d at p. 259.) By eliminating the resistance requirement, the *Young* court observed, "the Legislature clearly intended to change prior law with regard to the use of force in rape." (*Ibid.*) The court did not find any such legislative intent, however, "with regard to the fear element." (*Ibid.*) Thus, the court suggests that, *independent of the defendant's use of force,* the prosecution must always prove that the victim feared "immediate and unlawful bodily injury." Stated differently, the court seems to be saying that a defendant can be convicted under section 261(2) on the basis only of fear but not on the basis only of force. The fear element is indispensable, *Young* indicates, because under the statute, "it is not enough for the prosecution to show that sexual intercourse was accomplished against the will of the victim by means of fear. There is a further requirement that the victim fear 'immediate and unlawful bodily injury.'" The court also thought it important that "[e]ven an unreasonable fear may suffice . . . ." (*Ibid.*)

The rape conviction was reversed in *Young* because the record rendered the court "unable to state with any degree of certainty which theory the jury may have used to find defendant guilty of rape." (190 Cal.App.3d at p. 259, citing *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468].)[10] The court indicates that the evidence would be insufficient if fear

---

[10] After declaring that the prosecution must always prove the element of fear, and that based on the record "the jury could not reasonably have concluded that defendant committed a rape by means of fear of immediate and unlawful bodily injury" (190 Cal.App.3d at p. 259), the court concluded that "Any further proceedings on the rape count based on this theory

was the basis of the verdict because the defendant "did not do or say anything that could induce fear of immediate and unlawful bodily injury." (190 Cal.App.3d at p. 259.)[11]

Although *Young* is factually distinguishable from the present case in a number of critical particulars (e.g., the defendant did not concede evidence of fear, as does defendant here), the case warrants discussion because of the mischief it can cause.

The analysis and holding in *Young* is in our view insupportable. In the first place, and most obviously, the opinion cannot be reconciled with the language of section 261(2): force "or" fear does not mean force "and" fear. The theory of the *Young* court that the fear element must always be proved because the statute requires not merely an unfocused fear but fear of "immediate and unlawful bodily injury,"[12] which may even be an unreasonable fear, just does not make sense. The *Young* court provides no good reason, nor are we aware of any, why the judiciary should interfere with the legislative judgment that a defendant can be convicted of the crime of rape defined in section 261(2) where it is satisfactorily established, without more, that an act of sexual intercourse was accomplished against a person's will by means of force.

*Young* is additionally untenable for the related reason that it effectively prohibits the finder of fact from inferring the victim's fear of immediate and unlawful bodily injury from the fact of the defendant's use of force. Perhaps a situation could be hypothesized in which a woman forced to submit to an act of sexual intercourse against her will did not fear immediate and unlawful bodily injury, but we do not think it easy to do so. In any event, we do not think it proper to make such a natural inference legally ineffectual. The statutory specification of fear of "immediate and unlawful bodily injury" simply clarifies that the offense includes rapes initiated by forms of intimidation that do not involve direct physical compulsion, such as threats; it could not have been intended to prohibit a trier of fact from inferring the necessary fear from the use of force, as *Young* suggests. (*People* v. *Barnes, supra,* 42 Cal.3d at p. 299.)

---

are barred by the double jeopardy clause." (*Ibid.*) The fact that the court remanded for retrial of the rape count (*Id.,* at p. 260) is thus inexplicable.

[11] This conclusion is difficult to reconcile with the court's earlier observation, included in its statement of the facts of the case, that the victim did not tell the defendant she did not want him to put his penis in her vagina because she was " 'too scared.' " (190 Cal.App.3d at p. 252.) According to the court, "She was afraid of defendant, afraid he would do something to her such as touching her on her 'private place' again." (*Ibid.*)

[12] The confusion that has arisen from use of the word "unlawfully" in criminal statutes is discussed in Williams, Criminal Law (2d ed. 1961) at pages 27-29.

Lastly, we think *Young's* reliance on *People* v. *Green, supra,* is misplaced, because *Green* dealt with situations in which the prosecution relied on different and distinct legal theories; *Green* did not consider a single jury instruction that properly posited two alternate methods of committing a crime. (*People* v. *Green, supra,* 27 Cal.3d at pp. 67-71.)

In any event, and entirely apart from the legal theory set forth in *Young,* there is no shortage of evidence to support the rape convictions in the present case.

█ To evaluate a sufficiency-of-the-evidence claim " ' "[W]e must judge whether the evidence of each of the essential elements . . . is *substantial.*" ' " (*People* v. *Barnes, supra,* 42 Cal.3d at p. 303, quoting *People* v. *Johnson* (1980) 26 Cal.3d at 557, 577, [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] italics in the original.) Where evidence of forcible rape is at issue, "the reviewing court . . . looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim . . . . Additionally, the complainant's conduct must be measured against the degree of force manifested or in light of whether her fears were genuine and reasonably grounded." (*People* v. *Barnes, supra,* 42 Cal.3d at p. 304.)

█ The record in this case is replete with evidence of both force and fear of bodily injury. Appellant accosted all the victims in remote areas, late at night. He either brandished a gun, threatened to shoot, or, in two cases, fired the gun to force the boyfriends into the car trunks. Five victims were pulled to appellant's vehicle and driven away. Appellant hit two victims, blindfolded three, handcuffed and bound another. Due to the extensive evidence of both force and fear, we would be compelled to affirm the rape convictions even if—as is not the case—we agreed that such dual evidence were legally necessary.

V.-VIII.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

* See footnote, *ante,* page 197.

## DISPOSITION

The judgment is affirmed. The petition for a writ of habeas corpus is denied.

Rouse, J., and Benson, J., concurred.

A petition for a rehearing was denied September 21, 1988, and appellant's petition for review by the Supreme Court was denied November 30, 1988.